UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VASILY JEWELL, AN INDIVIDUAL<br><br>    Plaintiff.<br><br>v.<br><br>BESTBUS COMPANY<br><br>    Defendants. | ) <br>) <br>) CASE NO.: <br>) <br>) COMPLAINT <br>) <br>) JURY TRIAL DEMANDED <br>) <br>) <br>) |

## COMPLAINT

Comes now Plaintiff Vasily Jewell (hereinafter "Plaintiff" or "Jewell"), by and through his undersigned counsel, for his complaint against Defendant Bestbus, Inc. ("Bestbus" or "Defendant"), hereby alleges and seeks relief as follows:

## NATURE OF THE ACTION

1. This action seeks recovery for damages Jewell suffered as a result of Bestbus' blatant violations of state and federal wage and hour laws, as well as the willful use of force and battery, assault, negligent hiring and retention, conspiracy to violate civil rights by Defendant against a civilian citizen, Vasily Jewell that caused him serious injury, loss of right, loss of dignity, embarrassment, loss of liberty and both physical and emotional trauma.

## PARTIES, JURISDICTION, AND DIVISION

2. Plaintiff Vasily Jewell is and was at all material times a resident of the District of Columbia and was employed by Defendant Bestbus within the meaning of 29 U.S.C. §203(g) and DC Code § 32-1002(c).

3. Upon information and belief, Defendant Bestbus, formerly known as DC2NY Incorporated, was incorporated in the District of Columbia, with its principal place of business located at 1401 Church Street, NW, Suite 516, Washington, DC, 20005.[1]

4. At all times relevant herein, Defendant Bestbus was an employer within the meaning of 29 U.S.C. § 203(d) and the District of Columbia's Minimum Wage Act, D.C. Code § 32-1002(3).

5. At all times relevant herein, Plaintiff's place of employment and Bestbus' corporate headquarters was located at 2029 P St. NW, Suite 201, Washington, DC 20036.

6. Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331 and the FLSA 29 U.S.C. § 216(b), and 28 U.S.C. § 1367. Jurisdiction is also proper under 28 U.S.C. § 1332; there is complete diversity of the parties and the amount in controversy exceeds $75,000.00.

7. Venue is proper under 28 U.S.C. § 1391(b). A substantial part of the events giving rise to the claim occurred in the District of Columbia.

---

[1] Commonwealth of Virginia State Corporation Commission, *Business Entity Details*, (last visited Oct. 12, 2017) https://sccefile.scc.virginia.gov/Business/F198136.

## SUMMARY OF THE FACTS

### Violation of the Settlement Agreement

8. Since October 10, 2007, Plaintiff has been a reliable, hard-working employee for BestBus (formerly DC2NY, Inc.) as a dispatcher.

9. Mr. Jewell was compensated at a rate of $17.80 per hour.

10. On August 14, 2015, Bestbus and Mr. Jewell signed a Settlement Agreement to compensate Mr. Jewell for nonpayment of overtime wages and wages related to an agreed upon wage increase. (Attached hereto as Exhibit 1).

11. Four other employees were involved in similar agreements due to Bestbus's failure to pay overtime in accordance with DC law.

12. In the Settlement Agreement, Bestbus agreed to pay Mr. Jewell twenty-two thousand dollars ($22,000.00) inclusive of unpaid wages, attorney's fees, costs, and damages from the wage dispute.

13. In the Settlement Agreement, Bestbus also agreed to provide Mr. Jewell with two days off per week, not to include weekends, and to be determined by Bestbus with reasonable notice to Jewell.

14. In the Settlement Agreement, Bestbus also agreed to provide Jewell with a pay rate increase from $17.80 to $20.50 effective immediately upon execution of the Settlement Agreement.

15. This 15% pay increase was to provide Bestbus with time to reimburse Mr. Jewell for additional back pay to which he was owed.

16. One week after entering into the Settlement Agreement, Bestbus significantly decreased Mr. Jewell's wages from $20.50 per hour as required by the Settlement Agreement to $20.50 per bus in a New Salary Agreement.

17. The $20.50 per bus pay structure left Mr. Jewell with an hourly wage of approximately $12.80 per hour.

18. Bestbus' CEO, Richard Green, and Bestbus' President, Asi Ohana, each intentionally mispresented to Mr. Jewell that the change in pay structure would not result in a decrease in pay, when in fact the change resulted in an annual reduction in Mr. Jewell's pay of more than $10,000.00.

19. Mr. Jewell was not given any choice in this matter and was told by Mr. Green and Mr. Ohana that he would lose his job if he complained about this change.

20. Mr. Jewell, mistakenly believed that the new commission based payment was intended to institute the terms of the Settlement Agreement that would result in an increase in pay.

21. Pursuant to the terms of the Settlement Agreement, Mr. Jewell's wages were to increase by $6,000.00 per year.

22. Mr. Jewell earned an average of $40,000.00 per year in 2014 and 2015 and a 15% increase in pay should have resulted in $46,000.00 per year. However, his pay decreased to $30,428.29 in 2016.

23. Mr. Green and Mr. Ohana's fraudulently misrepresentations to Mr. Jewell regarding his new payment structure was nothing more than a thinly veiled scheme by Bestbus management to illegally recoup monies paid to Mr. Jewell in the August 2015 settlement.

24. These actions were in breach of the Settlement Agreement.

25. The actions of changing to a per bus agreement immediately after the Mediation and resulting settlement clearly demonstrate that Bestbus management never intended to honor the terms of the Settlement Agreement.

26. By settling his prior claims against Bestbus under false pretenses, and thereby foregoing Mr. Jewell's opportunity to seek redress in court, Mr. Jewell relied upon to these material misrepresentations to his detriment as he lost over $16,000.00 per year and any award he would have received at trial. Accordingly, Mr. Jewell lost approximately $24,000.00 in wages from August 2015 until he left the company in February 2017 ($16,000.00 per year x 1.5 years).

### Failure to Pay Overtime

27. Improperly switching to a per-bus rate violated the Fair Labor Standards Act ("FLSA"), as it was a way to avoid paying overtime compensation to Mr. Jewell, who regularly worked more than 40 hours per week.

28. Bestbus also failed to maintain records of Mr. Jewell's hours and wages during his employment as required by the FLSA and DC law.

29. During his employment, Mr. Jewell was provided with insufficient documentation of his work hours. For example, the weekly payments from Bestbus did not state hours worked.

30. This further demonstrates Bestbus' aim to keep its employees in the dark about their compensation as they repeatedly violate minimum wage law, overtime requirements, and contractual agreements.

31. Bestbus' failure to maintain proper employment records and/or share these records with their employees were repeated, willful and intentional violations of the FLSA and DC law, as Bestbus was accused of similar willful violations of maintaining proper employment records during the period of 2012 to 2015 by the prior five claimants.

32. In addition, the evidence demonstrates that this failure to pay at the contracted rate and failure to pay overtime was repeated, willful, and intentional, as Bestbus also has a long, documented history of failing to pay their employees overtime.

**Assault and Battery, Negligent Hiring and Supervision**

33. During his employment, Avi Cohen acted as Mr. Jewell's general manager and CEO Richard Green acted as his supervisor.

34. In November 2016, Frazier Scott ("Mr. Scott") began working for BestBus to help during the busy holiday travel season starting with Thanksgiving.

35. Mr. Scott began coming to work late, acting aggressively, and engaging in verbal abuse towards customers and Mr. Jewell.

36. Mr. Jewell reported this behavior on November and December of 2016 and January and February of 2017 to Richard Green and expressed his concerns about Scott's volatility and the hostile work environment it had manifested.

37. Not only did Mr. Green and BestBus management fail to subject Mr. Scott to any type of discipline, but inexplicably, BestBus management upgraded Mr. Scott's status from probationary to a permanent employee.

38. Richard Green also informed Mr. Scott that Mr. Jewell was complaining about tardiness at work and his abusive behavior.

39. On or about February 17, 2017, Mr. Scott again started verbally abusing Mr. Jewell while at work, as many passengers looked on in shock and disbelief. Once the bus had departed for New York City, Mr Jewell went into the company office to attempt to report the incident. At this point, Mr. Scott lunged at Mr. Jewell and started to choke him around the neck and slammed him to the floor, while threatening to "kill [him]".

40. As Mr. Jewell struggled to breathe, Bestbus employees Regina Blake and Michael Charity, who were also present in the office and witnessed the attack, attempted to assist Mr. Jewell, fearing that Mr. Jewell was in grave danger. Ms. Blake began screaming at Mr. Scott to stop and Mr.

Charity managed to pull Mr. Scott of Mr. Jewell. The police and EMT were then called to the scene.

41. After the responding officers interviewed Mr. Jewell, he attempted to go home. However, when he got to his car, he saw that the front tire had been punctured on the sidewall in such a manner that it appeared to be intentionally slashed with a sharp object.

42. Upon information and belief, Mr. Scott had a criminal history prior to this incident.

43. The following day, Mr. Jewell woke up with considerable difficulty moving his neck and was in extreme pain. Additionally he could not swallow. As a result of the severity of his symptoms, he presented himself at George Washington University Hospital Emergency Room for evaluation and treatment. There he was examined by Dr. Robert Shesser and was diagnosed with a Contusion on his neck, neck sprain, back pain and sciatica. Mr. Jewell was prescribed Prednisone and Naprosyn for the pain and inflammation and was discharged later that evening with home care instructions and follow-up instructions to see Dr. Raymond Martins for his next available appointment.

44. Mr. Jewell presented himself to Whitman Walker Health on March 13, 2017 complaining of neck and back pain from the choking injury. After a thorough examination, Dr. Martins prescribed a treatment regimen of electric stimulation therapy, therapeutic exercises and manual therapy one to two times a week. Mr. Jewell received physical therapy from Whitman Walker Health for approximately six (6) weeks (from 3/13/17 to 5/04/17).

45. Mr. Jewell's medical expenses included $1,292 for the George Washington University Emergency Room and $1,354.32 for treatment from Dr. Raymond Martins at the Whitman Walker Health Center.

46. Since Mr. Jewell was in fear for his safety and the hostile work environment borne out of these unfortunate events, he was forced to leave the company and look for work elsewhere at this financial detriment.

47. Mr. Jewell has also suffered severe psychological trauma as a direct and proximate result of the harassment by Mr. Scott and of the horrific attack on February 17, 2017. Specifically, Mr. Jewell has suffered from constant anxiety, sleeplessness, loss of appetite, nightmares, anger, sadness, depression, self-loathing and confusion.

48. Mr. Jewell was treated by a therapist for his psychological trauma and was prescribed antidepressant medication.

49. Bestbus management did not terminate or discipline Mr. Scott after the incident even though they had actual and constructive knowledge that Mr. Scott was dangerous to Mr. Jewell, other employees, and customers.   1877.8155553   410.356.9281   email info@fidelsubrogationassociates.com

50. Upon information and belief, Mr. Scott was arrested and incarcerated for the assault serving as the subject of this Complaint.

### FIRST CAUSE OF ACTION
(Breach of Contract [New Salary Agreement] – DC Code §7-751.13)

51. Plaintiff hereby re-alleges and incorporates all preceding paragraphs as if fully stated herein.

52. Plaintiff and Defendant had a valid contract, giving rise to duties that Bestbus breached by misrepresenting Mr. Jewell's new salary terms, which resulted in damages.

53. Bestbus made a falsification or misrepresentation of information on Mr. Jewell's new payment agreement by claiming that transitioning him to a commission of $20.50 per bus ride would not be a reduction in his salary, even though they knew it would be.

54. Mr. Jewell made an average of $40,000.00 per year in 2014 and 2015, and pursuant to the terms of the August 2015 Settlement Agreement, he was to receive a 15% pay increase, $46,000 per year. After Bestbus began paying him $20.50 per bus ride, his pay decreased to $30,428.29 in 2016.

55. Under DC Code § 7-751.13(2) this constitutes a breach of contract.

## SECOND CAUSE OF ACTION
### (Breach of Contract [Settlement Agreement] – DC Code § 7-751.13)

56. Plaintiff hereby re-alleges and incorporates all preceding paragraphs as if fully stated herein.

57. Settlement agreements are construed under "general principles of contract law." *Goozh v. Capitol Souvenir Co.*, 462 A.2d 1140, 1142 (D.C. 1983).

58. The Courts enforce a valid and binding settlement agreement just like "any other contract." *Rommel v. West American Insurance Co.*, 158 A.2d 683, 684-85 (D.C. 1960).

59. Under the Settlement Agreement, Mr. Jewell was promised a salary of $20.50 per hour.

60. One week after signing the Settlement Agreement, Bestbus began paying Mr. Jewel $20.50 per bus ride.

61. Under the Settlement Agreement, Mr. Jewell was to receive a 15% increase in pay (i.e. $46,000.00 per year). However, his pay decreased to $30,428.29 in 2016.

62. The language of the Settlement Agreement is consistent with the expectation that what it settles is an action for a wage claim contingent upon compliance with the terms of the Agreement.

63. Bestbus failed to comply with the terms of the Settlement Agreement in which Bestbus promised to pay Mr. Jewell $20.50 per hour (a 15% pay increase) and instead paid him $20.50 per bus ride (a 25% pay decrease).

## THIRD CAUSE OF ACTION
**(Failure to Keep Work Records – Federal Fair Labor Standards Act, 29 U.S.C. § 211(c))**

64. Plaintiff hereby re-alleges and incorporates all preceding paragraphs as if fully stated herein.

65. Plaintiff is an "employee" within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(e)(1).

66. Plaintiff is a "non-exempt" employee within the meaning of FLSA, 29 U.S.C. § 213.

67. Defendant is an "employer" within the meaning of FLSA, 29 U.S.C. § 203(d).

68. FLSA requires that employers maintain accurate records of hours worked each workday, hours worked each workweek, and earnings and wages paid, pursuant to 29 U.S.C. § 211(c).

69. Defendant violated 29 U.S.C. § 211(c) by failing to keep accurate records.

70. Defendant has failed to provide Plaintiff with records of his hours with his weekly salary and has attempted to obscure Plaintiffs understanding of his work records to hide his unpaid overtime.

71. As such, Defendant's actions in violation of 29 U.S.C. § 211 were willful and repeated.

72. Defendant is liable to Plaintiff under §§ 207 and 216 of FLSA, for his failure to make, keep, and preserve work records which has prevented Plaintiff from calculating his unpaid overtime compensation, plus an equal amount as liquidated damages, court costs, reasonable attorneys' fees and expenses, and any other relief deemed appropriate by the Court.

## FOURTH CAUSE OF ACTION
### (Failure to Pay Overtime – District of Columbia Minimum Wage Act, § 32-1001 et seq.)

73. Plaintiff hereby re-alleges and incorporates all preceding paragraphs as if fully stated herein.

74. Defendant Bestbus is an "employer" within the meaning of the District of Columbia's Minimum Wage Act, D.C. Code § 32-2001(3).

75. Defendant violated DC Code § 32-1003(c) by failing to pay Plaintiff at the rate of one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one work week. The foregoing policy is intended to facilitate the corresponding policy of the District of Columbia that persons employed in the District of Columbia should be paid at wages sufficient to provide adequate maintenance and to protect the employee's health and wellbeing. D.C. § 32-1001 (a).

76. Mr. Jewell regularly worked more than 40 hours per week, but was paid $20.50 per bus ride.

77. Defendant failed to provide Plaintiff with work records and as such the burden of proof is on Defendant to show that its payments to Plaintiff met the DC minimum and overtime wage laws.

78. Defendant is liable to Plaintiff, under DC Code § 32-1003 for his unpaid overtime compensation, in an amount up to three times his withheld wages, plus reasonable attorneys' fees, costs, and expenses, and any other relief deemed appropriate by the Court.

## FIFTH CAUSE OF ACTION
### (Retaliation – Fair Labor Standards Act, 29 U.S.C. § 215(a)(3))

79. Plaintiff hereby re-alleges and incorporates all preceding paragraphs as if fully stated herein.

80. Defendant Bestbus is an "employer" within the meaning of the Federal Fair Labor Standards Act, 29 U.S.C. § 203(d).

81. Plaintiff's conduct leading to the Settlement Agreement was to ensure his rights to a minimum wage under FLSA and amounted to the assertion of his statutory rights by taking action adverse to Defendant Bestbus.

82. Defendant's conduct, ignoring the Settlement Agreement, would likely deter a reasonable person from asserting his/her rights under the Federal Labor Standards Act.

83. Defendant's conduct was undertaken in response to Plaintiff's assertion of the aforesaid rights.

84. Defendant's conduct constitutes retaliation within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 215 (a)(3).

## SIXTH CAUSE OF ACTION
**(Vicarious Liability for Assault and Battery under Respondeat Superior)**

85. Plaintiff hereby re-alleges and incorporates all preceding paragraphs as if fully stated herein.

86. Defendant, at all times relevant hereto, was a clearly identified employer of Mr. Scott, who was acting in the course and scope of his employment, was on duty and was on the Bestbus work premise when he attacked Mr. Jewell.

87. Defendant as liable for the negligent or intentional torts committed by theirs employees during the course and scope of their employment.

88. As a direct and proximate result of Mr. Scott's unlawful conduct within the course and scope of his employment, Plaintiff has sustained severe physical injuries, and has incurred reasonable and necessary medical and other expenses for the treatment of those injuries.

89. As a further direct and proximate result of Mr. Scott's unlawful conduct within the course and scope of his employment, Plaintiff has incurred, and will continue to incur, pain and suffering.

90. As a further direct and proximate result of Mr. Scott's unlawful conduct within the course and scope of his employment, Plaintiff has suffered a loss of time, earnings, and impairment of his earning capacities.

## SIXTH CAUSE OF ACTION
**(Negligent Supervision and Training under the Common Law of the District of Columbia)**

91. Plaintiff hereby re-alleges and incorporates all preceding paragraphs as if fully stated herein.

92. Defendant Bestbus, as a common carrier, owes a duty of reasonable care to select employees competent and fit for the work assigned to them and to refrain from retaining the services of an unfit employee.

93. When an employer neglects this duty and as a result injury is occasioned to a third person, the employer is liable even though the injury was brought about by the willful act of the employee beyond the scope of his employment. *See Fleming v. Brofin*, 80 A.2d 915, 917 (D.C. 1951) (finding a clear duty in the selection of a delivery man).

94. According to the Restatement, Agency, § 213, Comment d, "if a principal, without exercising due care in selection, employs a vicious person to do an act which necessarily brings him in contact with others while in the performance of a duty, he is subject to liability for harm caused by the vicious propensity."

95. According to the Restatement, Torts, § 302, Comment n, an employer is liable "where he has brought into contact with the other, or intentionally caused the other to associate himself with, a person whom the actor knows or should know to be peculiarly likely to commit

intentional or reckless misconduct; the association being one which creates temptation to, or peculiar opportunity for, such misconduct."

96. Defendant was negligent in engaging and retaining an unfit employee, Mr. Scott, since Mr. Jewell complained to his supervisor about Mr. Scott's abusive behavior and they did nothing.

97. Defendant has a duty of reasonable care as a common carrier to investigate Mr. Scott before hiring him and upon information and belief, Mr. Scott had a criminal history.

98. Defendant was also responsible for ensuring that all its employees were adequately trained and supervised. As such, Defendant has a duty to anticipate and guard against its employees' human traits that could cause harm to others. Defendant breached this duty by informing Mr. Scott, who was known to be abusive, that Mr. Jewell had been complaining about his aggressive behavior was shocking was negligent supervision.

99. Mr. Scott's assault and battery of Mr. Jewell was a direct and proximate cause of Bestbus' negligent hiring and retention as well as training and supervision of Mr. Scott. Therefore, Defendant is liable for the damages inflicted on Mr. Jewell.

## SIXTH CAUSE OF ACTION
(Hostile Work Environment – Title VII of the Civil Rights Act of 1964)

100. Plaintiff hereby re-alleges and incorporates all preceding paragraphs as if fully stated herein.

101. A plaintiff has an actionable hostile work environment claim under Title VII "when the workplace is permeated with discriminatory intimidation, ridicule, and insult' ... that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusing working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 (1993).

102. Defendant is liable for the hostile work environment it created by allowing Mr. Scott to continually ridicule and abuse Mr. Jewell based on his homosexuality.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment against Defendant in Plaintiff's favor on all counts, and grant the following relief:

a. Award Plaintiff his unpaid overtime wages, plus liquidated damages, pursuant to §207 and § 216 of the FLSA;

b. Award Plaintiff his unpaid overtime wages, which amount should be trebled, pursuant to MD Code, Labor and Employment, § 3-415, and § 3-507.2;

c. Award Plaintiff damages for his lost wages, lost earning capacity, lost ability to find new work, damaged reputation among his co-workers, and emotional distress, in an amount that will fully compensate Plaintiff for his injuries;

d. Award Plaintiff punitive damages in light of Defendant's willful and outrageous conduct;

e. Award Plaintiff his costs and attorneys' fees incurred in this action under 9 U.S.C. § 216 of the FLSA, and under Plaintiff's related state law claims as allowed by law;

f. Award Plaintiff prejudgment and post-judgment interest;

g. Grant such other relief that the Court deems just and proper.

## REQUEST FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff respectfully request that all matters contained in this Complaint be tried by Jury.

Dated: February 15, 2018

Respectfully Submitted,

LAW OFFICES OF LEONARD B. FERENCE

By:

/s/ Leonard B. Ference /s/
Leonard B. Ference, Esq. [Bar # 995053]
LAW OFFICES OF LEONARD B. FERENCE
1455 Pennsylvania Avenue, N.W., Suite 400
Washington, D.C. 20004
(202) 467-2783
(202) 821-4703 (fax)
lference@ferencelawfirm.com